IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL QUINN and ERICA QUINN, H/W, | |
| Plaintiffs, | CIVIL ACTION NO. 12-2152 |
| v. | |
| CONTRACT TRANSPORTATION SYSTEM CO., et al., | |
| Defendants. | |

**OPINION**

**Slomsky, J.**                                                                 **April 18, 2013**

## I.    INTRODUCTION

Plaintiffs Michael and Erica Quinn, residents of Philadelphia, Pennsylvania, filed a

Complaint in the Court of Common Pleas of Philadelphia County against Defendant Contract

Transportation System Co. ("Defendant CTS").  In the Complaint, Plaintiff Michael Quinn

alleges that he was physically injured while unloading cargo from a truck owned by Defendant

CTS, which is an Ohio-based company.  Defendant CTS has timely removed the case to federal

court based upon diversity of citizenship jurisdiction.

Through discovery, the parties learned that the driver of the truck in question was an

employee of USF Glen Moore, a Pennsylvania company.  Several months after Plaintiff Michael

Quinn's accident, USF Glen Moore sold substantially all of its assets to Celadon Trucking

Services, Inc., a company based in Indiana.  Based upon this information, Plaintiffs filed an

Amended Complaint naming both USF Glen Moore and Celadon Trucking Services, Inc. as

Defendants.

Presently before the Court is Plaintiffs' Motion to Remand this case to the Philadelphia Court of Common Pleas (Doc. No. 21) because — with Defendant USF Glen Moore named as a party in this case — there is no longer complete diversity of citizenship. For reasons that follow, the Court will grant the Motion.[1]

## II.    BACKGROUND

On April 14, 2011, Plaintiff Michael Quinn was working for MAB Paints located at 2431-B Castor Avenue, Philadelphia, Pennsylvania. (Doc. No. 1, Ex. A ¶ 5.) While unloading cargo from a delivery truck, he allegedly tripped and fell because the truck's lift gate was not flush with the ground. (Id. ¶ 6.) He claims the accident caused him to sustain multiple injuries, requiring, among other treatments, major surgery which he had in May 2011. (Id. ¶ 9.)

Plaintiffs initially believed the truck was owned and operated solely by Defendant CTS. Therefore, on February 23, 2012, Plaintiffs filed the Complaint against Defendant CTS in the Court of Common Pleas of Philadelphia County. (Doc. No. 1, Ex. A.) The Complaint alleged state law claims of negligence and loss of consortium.

On April 20, 2012, Defendant CTS, an Ohio corporation with a principal place of business in Cleveland, Ohio, filed the notice of removal in this Court pursuant to 28 U.S.C. § 1441. (Doc. No. 1.) Defendant CTS sought removal based on diversity of citizenship jurisdiction: "plaintiffs have alleged that the damages in controversy exceed the sum or value of $75,000.00, exclusive of interest and costs and [the suit] is between citizens of different states." (Id. ¶ 6.) Plaintiffs did not oppose removal at that time. Following a preliminary pretrial

---

[1] In deciding this Motion, the Court has considered the following: Plaintiffs' Motion to Remand (Doc. No. 21), Defendant CTS' Response in Opposition (Doc. No. 28), Plaintiffs' Reply (Doc. No. 30), the arguments of counsel at the January 18, 2013 hearing, Defendant USF Glen Moore's Response in Opposition (Doc. No. 52), and Plaintiffs' Reply (Doc. No. 53).

conference, and pursuant to the Court's Scheduling Order, the parties then engaged in fact

discovery. (See Doc. Nos. 11, 12.)

On October 25, 2012, prior to the end of discovery, Defendant CTS sought leave from the

Court to join Defendant Celadon Trucking Services, Inc. as a third-party Defendant. (Doc. No.

14.) The motion was unopposed. (Id. ¶ 12.) In support of the motion, Defendant CTS stated:

> In Defendant CTS's August 22, 2012 Answers to Plaintiffs'
> Interrogatories, Plaintiffs were informed that the driver of the subject
> truck was not a CTS employee.
>
> ***[The driver] was an employee of USF Glen Moore***, a company that was
> purchased by proposed third party defendant, Celadon Trucking
> Services, Inc., in December 2011.
>
> Though it took a little longer than anticipated or desired . . . Defendant
> CTS has since located the Contract Carrier Transportation agreement and
> the Trailer Interchange agreement in place with USF Glen Moore at the
> time of the subject shipment. . . .
>
> Because proposed third party defendant Celadon Trucking Services, Inc.
> purchased USF Glen Moore, it is USF Glen Moore's successor in interest
> for the actions and/or inactions of USF Glen Moore and its employees,
> including the driver of the subject shipment, as they relate to Plaintiffs'
> cause of action.
>
> As USF Glen Moore's successor in interest, Celadon Trucking Services
> is also responsible for USF Glen Moore's actions and/or inactions under
> the Contract Carrier Transportation agreement . . ., which includes an
> indemnification clause . . . .

(Id. ¶¶ 6-10 (emphasis added).) The Court granted Defendant CTS' motion to join the third-party

Defendant. (Doc. No. 15.)

On November 13, 2012, based on this same newly-acquired information, Plaintiffs sought

leave to amend the Complaint to add both Celadon Trucking Services, Inc. and USF Glen Moore

as Defendants. (Doc. No. 16.) Unlike Defendant CTS, Plaintiffs decided to add USF Glen

Moore as a party because "USF Glen Moore is still a going concern as demonstrated by the fact

that its website is still up and running," and therefore "[i]t is necessary for Plaintiffs to include USF Glen Moore and Celadon Trucking Services, Inc. as Defendants in the instant action in order to ensure that the parties responsible for Plaintiff's accident and subsequent injuries are held liable." (Id. ¶¶ 10, 14.) Defendant CTS did not oppose Plaintiffs' Motion to add Defendants USF Glen Moore and Celadon Trucking Services, Inc. (Id. ¶ 13.)

The Court granted Plaintiffs' Motion, and an Amended Complaint was filed on November 21, 2012 (Doc. No. 19). The Amended Complaint raises a claim that Defendant USF Glen Moore and/or its employees were negligent in, among other things, "[a]llowing their truck to exist with a lift gate that was not flush with the ground," "[f]ailing to warn plaintiff of the dangerous condition," and "[f]ailing to properly maintain and/or repair the truck's lift gate." (Id. ¶ 10.)

A Celadon Trucking Services, Inc. employee, working at the Carlisle, Pennsylvania location formerly owned by Defendant USF Glen Moore, accepted service of the Amended Complaint on behalf of Defendant USF Glen Moore. (Doc. No. 28 at 6.) Shortly thereafter, Plaintiffs filed the instant Motion to Remand. (Doc. No. 21.) As Pennsylvania residents, Plaintiffs contend that with the addition to the Complaint of Defendant USF Glen Moore, a Pennsylvania company, diversity of citizenship jurisdiction is destroyed, which deprives this Court of subject matter jurisdiction. (See id.)

On December 12, 2012, Defendant CTS filed a Response in Opposition to the Motion to Remand (Doc. No. 28), arguing that, because Defendant USF Glen Moore had sold substantially all of its assets, including the property in Carlisle, Pennsylvania, to Defendant Celadon Trucking Services, Inc. in December 2011, Plaintiffs have not established Defendant USF Glen Moore was a citizen of Pennsylvania for purposes of diversity jurisdiction. (See id.) In a similar vein,

Defendant USF Glen Moore filed a Motion to Dismiss the Amended Complaint, claiming the employee at the Carlisle facility was not authorized to accept service on its behalf. (See Doc. No. 32.)

On January 18, 2013, the Court held a hearing on Plaintiffs' Motion to Remand and Defendant USF Glen Moore's Motion to Dismiss. (Doc. No. 39.) At the hearing, counsel for the parties agreed that the Carlisle, Pennsylvania employee was not the appropriate person to accept service on behalf of Defendant USF Glen Moore, and Plaintiffs were given further time to attempt to properly effectuate service.

On February 5, 2013, Plaintiffs properly served USF Glen Moore and a copy of the affidavit of service was filed with the Court. (Doc. No. 45.) Based upon proof of proper service, the Court denied Defendant USF Glen Moore's Motion to Dismiss as moot. (Doc. No. 46.) The Court then ordered Defendant USF Glen Moore to file a response to Plaintiffs' Motion to Remand. (Id.)

On February 26, 2013, Defendant USF Glen Moore filed a Response, in which it acknowledged being a citizen of Pennsylvania. (See Doc. No. 52 ¶¶ 7, 10.) Defendant USF Glen Moore claims, however, that diversity of citizenship jurisdiction is not destroyed because it was "fraudulently joined." (Id. at 5-7.) Plaintiffs' Motion to Remand is now ripe for disposition and will be granted.

III.    LEGAL ANALYSIS

Pursuant to 28 U.S.C. § 1332(a)(1), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." Such jurisdiction, also known as diversity of citizenship jurisdiction, "requires satisfaction of the amount in controversy requirement as well as complete

diversity between the parties, that is, every plaintiff must be of diverse state citizenship from

every defendant." In re Briscoe, 448 F.3d 201, 215 (3d Cir. 2006) (citation omitted).

Where diversity of citizenship exists, 28 U.S.C. § 1441(a) enables a defendant in a state

civil case to remove the case to federal court. In the instant case, it is undisputed that Defendant

CTS — initially the lone out-of-state Defendant — properly removed the case from the

Philadelphia Court of Common Pleas based on diversity of citizenship jurisdiction.

However, "[i]f at any time before final judgment it appears that the district court lacks

subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Where a case has

been removed based on diversity of citizenship, a court can lose subject matter jurisdiction

"[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial

federal question the removing defendant may avoid remand only by demonstrating that the non-

diverse party was fraudulently joined." Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir.

1992) (citations omitted). "But the removing party carries a 'heavy burden of persuasion' in

making this showing." Id. (citations omitted).

Here, Plaintiffs and Defendant USF Glen Moore are both citizens of Pennsylvania. The

jurisdiction of the Court in this case is based solely upon diversity of citizenship. Therefore, the

only way for Defendants CTS and USF Glen Moore to avoid remand, which they both oppose, is

to show that Defendant USF Glen Moore was fraudulently joined.

In Batoff, the Third Circuit noted the standard for determining whether a non-diverse

defendant has been fraudulently joined:

> Joinder is fraudulent where there is no reasonable basis in fact or
> colorable ground supporting the claim against the joined defendant, or no
> real intention in good faith to prosecute the action against the defendants
> or seek a joint judgment. But, if there is even a possibility that a state
> court would find that the complaint states a cause of action against any

one of the resident defendants, the federal court must find that joinder
was proper and remand the case to state court.

Id. (citations and quotation marks omitted).  Therefore, "[u]nless the claims against the non-

diverse defendant could be deemed 'wholly insubstantial and frivolous,' . . . joinder [cannot] be

considered fraudulent."  In re Briscoe, 448 F.3d at 218 (citation omitted).

Because of this high standard, a "finding of fraudulent joinder is usually reserved for

situations where recovery from the non-diverse defendant is a clear legal impossibility.

Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-

diverse defendant."  Burnett v. Chesapeake Appalachia, LLC, No. 11-1059, 2011 WL 3876412,

at *3 (M.D. Pa. Aug. 31, 2011) (citation omitted).

For example, in In re Briscoe, the Third Circuit held that non-diverse defendants had

been fraudulently joined because the claim against them was indisputably time-barred by the

state statute of limitations.  448 F.3d at 219.  In Brown v. JEVIC, fraudulent joinder was found

where a non-diverse defendant was joined after it had already filed for bankruptcy.  575 F.3d

322, 326 (3d Cir. 2009); see also Weaver v. Conrail, Inc., No. 09-5592, 2010 WL 2773382, at *7-

9 (E.D. Pa. July 12, 2010) (finding no colorable negligence claim against non-diverse defendant

railroad company, where company provided undisputed proof that it did not own, operate, or

maintain the railroad tracks at issue).

In the instant case, Defendant USF Glen Moore was not fraudulently joined.  Plaintiff

Michael Quinn alleges that Defendant USF Glen Moore and/or its employees were negligent and

caused him to suffer physical injuries while he was unloading cargo from a truck on April 14,

2011.  Specifically, Plaintiff alleges the truck's lift gate was not flush with the ground, which

caused him to trip and fall.  After discovery was taken in this case, Defendant CTS claimed the

truck was being operated that day by an employee of Defendant USF Glen Moore.  Because the

7

accident may have been caused by the maintenance or operation of the truck — which the driver

and/or his employer would likely have some responsibility for — Plaintiff named USF Glen

Moore as a Defendant "to ensure that the parties responsible for Plaintiff's accident and

subsequent injuries are held liable." (Doc. No. 16 ¶ 14.)

Defendant USF Glen Moore argues that joinder in this case is fraudulent because

"Plaintiffs have put forth no evidence establishing that there is any ground to support a claim

against Defendant USF," since Plaintiffs "have failed to identify [the] alleged employee" and

"have failed to make any specific allegations against Defendant USF." (Doc. No. 52 at 6-7.)

These arguments are unpersuasive.

Under Pennsylvania law, a negligence claim "is established by proving the following four

elements: '(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal

connection between the conduct and the resulting injury; and (4) actual damages.'" Grossman v.

Barke, 868 A.2d 561, 566 (Pa. Super. Ct. 2005) (citation omitted). "To prove negligence, a

plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted

either concomitantly or alternately." Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582,

597 (Pa. 2012). A corporate defendant "assumes the risk of individual agents' negligence under

the theory of vicarious liability." Id. Additionally, a corporate defendant "may also owe duties

of care directly to a plaintiff, separate from those of its individual agents, such as duties to

maintain safe facilities, and to hire and oversee competent staff." Id. at 598.

Defendant USF Glen Moore relies on two cases to support its claim that Plaintiffs have

not pled a colorable negligence claim under Pennsylvania law: In re Imprelis Herbicide

Marketing, Sales Practices and Products Liability Litigation, No. 11-MD-2884, 2013 WL

363693 (E.D. Pa. Jan. 30, 2013) and In re Rezulin Products Liability Litigation, 168 F. Supp. 2d

136 (S.D.N.Y. 2001). These cases, however, are inapposite to this case. The plaintiffs in <u>In re</u> <u>Imprelis Herbicide</u>, residential property owners, brought a negligence claim against a lawn care professional that had done work for them. <u>2013 WL 363693</u>, at *1. While tending to their property, the lawn care professional told the plaintiffs that herbicide should be applied to their lawn, and recommended that plaintiffs hire a different company, St. Clair, to do the work. <u>Id.</u> The plaintiffs took his advice, hired St. Clair, and, after St. Clair applied the allegedly unsafe herbicide, their property was damaged. <u>Id.</u> The lawn care professional did not recommend using the specific herbicide nor was he involved in any way when St. Clair applied it to the lawn. <u>Id.</u> The plaintiffs brought a negligence claim against the lawn care professional, a citizen of the same state as the plaintiffs, along with claims against the manufacturer of the herbicide and St. Clair, both out-of-state defendants. <u>Id.</u>

The out-of-state defendants removed the case to federal court, and argued the lawn care professional was fraudulently joined because state law did not recognize a negligence claim against the lawn care professional based on the facts the plaintiffs alleged. <u>Id.</u> The court agreed and denied the plaintiffs motion to remand. <u>Id.</u> at *5. In making this determination, the court found that state law allowed "a negligence claim for purely economic losses when the[re] is evidence of a 'special relationship' between the plaintiff and the defendant," but "[n]one of the 'special relationship' cases [the plaintiffs] cite[d] . . . [were] similar to the case at hand in any meaningful way." <u>Id.</u> at *3 (citation and quotation marks omitted). Accordingly, the court held that the negligence claim against the lawn care professional was a legal impossibility under state law. Thus, joinder was fraudulent and the case remained in federal court. <u>Id.</u> at *4-5.

In the second case, <u>In re Rezulin</u>, the plaintiffs were hundreds of individuals from multiple states that were seeking damages for personal injuries caused by the prescription drug

Rezulin. 168 F. Supp. 2d at 138. The plaintiffs brought suit against Rezulin's manufacturers, sales representatives, and prescribing physicians, among others. Id. at 138-40. After the defendants removed the state cases to federal court, plaintiffs, who were citizens of various states, sought to remand the case because of the naming of non-diverse defendants. Id. at 138. The court denied motions to remand because non-diverse defendants had been fraudulently joined. Like the court in In re Imprelis Herbicide, the court found joinder to be fraudulent where the plaintiffs' allegations, for example, of negligent failure to warn were clearly insufficient as a matter of state law. See id. at 139-40 (finding Alabama sales representative was fraudulently joined because Alabama negligence law requires a plaintiff to "show that the defendant failed to warn the prescribing physician," but the plaintiffs made no allegations that sales representatives had any dealings at all with prescribing physicians).

Here, unlike the plaintiffs in In re Imprelis Herbicide and In re Rezulin, Plaintiffs are alleging a simple, straightforward theory of negligence under Pennsylvania law: the truck driver and his employer had a duty to "properly maintain and/or repair the truck's lift gate," and that they breached the duty by allowing Plaintiff to unload cargo using a lift gate that was not flush with the ground, which caused Plaintiff to trip and fall, resulting in physical injuries. (See Doc. No. 19 ¶ 10.)[2] These allegations are sufficient under Pennsylvania negligence law to state a cause of action against a corporate defendant and its employee. The fact that the specific truck driver has not yet been identified is irrelevant because, as previously noted, Plaintiffs can bring a negligence action directly against a corporate defendant. Thus, Plaintiffs have a colorable claim under Pennsylvania law against non-diverse Defendant USF Glen Moore. Since both Plaintiffs

---

[2] The Court finds it significant that Defendant CTS — not Plaintiffs — identified Defendant USF Glen Moore as the company responsible for operating the truck at issue in this case. Moreover, USF Glen Moore still does business under its own name.

and Defendant USF Glen Moore are citizens of Pennsylvania, diversity of citizenship jurisdiction

is destroyed.  Consequently, this Court will remand the case to state court.

**IV.    CONCLUSION**

Based on the foregoing reasons, the Court will grant Plaintiffs' Motion to Remand this

case to the Philadelphia Court of Common Pleas.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL QUINN and ERICA QUINN, H/W, | |
| Plaintiffs, | CIVIL ACTION NO. 12-2152 |
| v. | |
| CONTRACT TRANSPORTATION SYSTEM CO., et al., | |
| Defendants. | |

## <u>ORDER</u>

**AND NOW**, this 18th day of April 2013, upon consideration of Plaintiffs' Motion to Remand (Doc. No. 21), Defendant Contract Transportation System Co.'s Response in Opposition (Doc. No. 28), Plaintiffs' Reply (Doc. No. 30), the arguments of counsel at the January 18, 2013 hearing, Defendant USF Glen Moore's Response in Opposition (Doc. No. 52), Plaintiffs' Reply (Doc. No. 53), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** that:

1. Plaintiffs' Motion to Remand (Doc. No. 21) is **GRANTED**.

2. This case is **REMANDED** to the Court of Common Pleas of Philadelphia County.

3. Any outstanding motions are **DENIED AS MOOT**.

4. The Clerk of Court shall close this case for statistical purposes.

BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.